IN THE
INDIANA SUPREME COURT

No. 25S-SD-167

| | |
|---|---|
| ROY LEE WARD, *Appellant-Defendant,* | Appeal from the Spencer Circuit Court, |
| v. | No. 74C01-0107-CF-158 |
| STATE OF INDIANA, *Appellee-Plaintiff.* | The Honorable Robert J. Pigman, Special Judge. |

**VERIFIED RESPONSE IN OPPOSITION TO REQUEST TO FILE
SUCCESSIVE PETITION FOR POST-CONVICTION RELIEF**

THEODORE E. ROKITA
Indiana Attorney General
Attorney No. 18857-49

TYLER BANKS
Supervising Deputy Attorney General
Attorney No. 30514-36

OFFICE OF INDIANA ATTORNEY
GENERAL TODD ROKITA
IGCS, Fifth Floor
302 W. Washington St.
Indianapolis, IN 46204-2770
(317) 234-7016
Tyler.Banks@atg.in.gov

*Counsel for Respondent*

1

State of Indiana
Response in Opposition to Successive Post-Conviction Review

## TABLE OF CONTENTS

Table of Authorities ....................................................................................3

    I.    The post-conviction rules do not permit civil-rights claims....................10

    II.    None of Ward's claims have any reasonable possibility of success. He should be denied another round of post-conviction review .....................16

        A.  Claim 1 (Paragraphs 8(A) & 9(A): Ward's First Amendment rights have not been and will not be violated by the Department of Correction's response to his public-record requests............................17

        B.  Claim 2 (Paragraphs 8(B) & 9(B)): Ward's procedural and substantive due process rights under the federal constitution have not been and will not be violated by his execution or the State's response to his public-record requests .................................................23

            1.  Procedural Due Process ..................................................................24

            2.  Substantive Due Process ................................................................30

        C.  Claim 3 (Paragraphs 8(C) & 9(C)): Ward's execution will not constitute cruel and unusual punishment under the federal constitution...........................................................................................34

        D.  Claim 4 (Paragraphs 8(D) & 9(D)): The execution chamber's viewing glass for witnesses does not violate Ward's federal due process rights and is not cruel and unusual punishment..................38

        E.  Claim 5 (Paragraphs 8(E) & 9(E)): Ward will not suffer a deprivation of his right to free speech under the federal constitution because witnesses to his execution do not have audio access to the execution chamber.................................................42

Conclusion....................................................................................................53

Verification...................................................................................................53

Certificate of Service...................................................................................54

State of Indiana
Response in Opposition to Successive Post-Conviction Review

## TABLE OF AUTHORITIES

**Cases**

*Am. Bus Ass'n v. Rogoff*, 649 F.3d 734 (D.C. Cir. 2011) ............................................. 18

*Archie v. City of Racine*, 847 F.2d 1211 (7th Cir. 1988) (*en banc*) ...................... 26, 27

*Ark. Times, Inc. v. Norris*,
    No. 5:07-cv-195, 2008 WL 110853 (E.D. Ark. Jan. 7, 2008) ................................. 50

*Associated Press et al. v. Neal et al.*, No. 1:25-cv-872-MPB-MJD (S.D. Ind.) ............ 43

*Azeez v. DeRobertis*, 568 F. Supp. 8 (N.D. Ill. 1982) .................................................... 21

*Baltoski v. Pretorius*, 291 F. Supp. 2d 807 (N.D. Ind. 2003) ................................. 21, 22

*Barnes v. State*, 435 N.E.2d 235 (Ind. 1982) ................................................................ 47

*Barney v. City of New York*, 193 U.S. 430 (1904) ........................................................ 27

*Barr v. Lee*, 591 U.S. 979 (2020) (per curiam) ....................................................... 13, 36

*Baze v. Rees*, 553 U.S. 35 (2008) ............................................................................*passim*

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) .................................... 25

*Bieghler v. State*, 839 N.E.2d 691 (Ind. 2005) ............................................................. 14

*Bigelow v. Virginia*, 421 U.S. 809 (1975) ..................................................................... 43

*Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731 (1983) ........................................... 17

*Bradley v. United States*, 410 U.S. 605 (1973) ............................................................. 46

*Bucklew v. Precythe*, 587 U.S. 119 (2019) ................................................. 35, 36, 37, 41

*Cal. First Amend. Coal. v. Woodford*, 299 F.3d 868 (9th Cir. 2002) .......................... 49

*Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972) ........................ 17

*Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600 (1979) ................................ 12

*Christopher v. Harbury*, 536 U.S. 403 (2002) ............................................................. 18

*City of Bloomington Bd. of Zoning Appeals v. UJEighty Corp.*,
    163 N.E.3d 264 (Ind. 2021) ...................................................................................... 30

State of Indiana
Response in Opposition to Successive Post-Conviction Review

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) ...................................... 25

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998) ....................................... 24, 32, 33

*Matter of Cont'l Illinois Sec. Litig.*, 732 F.2d 1302 (7th Cir. 1984) ..................... 45, 48

*Courthouse News Serv. v. Brown*, 908 F.3d 1063 (7th Cir. 2018) ............................. 45

*Crafton v. Gibson*, 752 N.E.2d 78 (Ind. Ct. App. 2001) ............................................. 31

*Culver-Union Twp. Ambulance Serv. v. Steindler*, 629 N.E.2d 1231 (Ind. 1994) ..... 12

*Davis v. Scherer*, 468 U.S. 183 (1984) ....................................................................... 26

*DeGrassi v. City of Glendora*, 207 F.3d 636 (9th Cir. 2000) ...................................... 43

*Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022) ................................... 31

*Engle v. Isaac*, 456 U.S. 107 (1982) ........................................................................... 27

*Estelle v. McGuire*, 502 U.S. 62 (1991) ...................................................................... 27

*Farmer v. Brennan*, 511 U.S. 825 (1994) .............................................................. 35, 41

*Felsher v. Univ. of Evansville*, 755 N.E.2d 589 (Ind. 2001) ...................................... 36

*First Amend. Coal. of Ariz., Inc. v. Ryan*, 938 F.3d 1069 (9th Cir. 2019) ............ 49, 51

*Fort Wayne Journal-Gazette v. Baker*, 788 F. Supp. 379 (N.D. Ind. 1992) ............... 48

*Freed v. Freed*, 227 N.E.3d 954 (Ind. Ct. App. 2024) ........................................... 30, 31

*Furman v. Georgia*, 408 U.S. 238 (1972) ................................................................... 51

*Gagnon v. Scarpelli*, 411 U.S. 778 (1973) ................................................................. 47

*Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275 (11th Cir. 2015) ...... 13, 36

*Globe Newspaper Co. v. Super. Ct. for Norfolk Cnty.*, 457 U.S. 596 (1982) .............. 45

*Glossip v. Gross*, 576 U.S. 863 (2015) ................................................................... 35, 41

*Gregg v. Georgia*, 428 U.S. 153 (1976) ...................................................................... 34

*Griswold v. Connecticut*, 381 U.S. 479 (1965) ........................................................... 31

*Gutierrez v. Saenz*, 145 S. Ct. 2258 (2025) ........................................................... 27, 28

State of Indiana
Response in Opposition to Successive Post-Conviction Review

*Harrison v. State*, 707 N.E.2d 767 (Ind. 1999) ........................................................... 29

*Hebert v. Louisiana*, 272 U.S. 312 (1926) .................................................................. 27

*Helling v. McKinney*, 509 U.S. 25 (1993) .................................................................. 35

*Hewitt v. Helms*, 459 U.S. 460 (1983),
    *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995) .. 27

*Holden v. Minnesota*, 137 U.S. 483 (1890)..................................................... 38, 46, 49

*Holmes v. Randolph*, 610 N.E.2d 839 (Ind. 1993) ..................................................... 24

*Houchins v. KQED*, 438 U.S. 1 (1978) ................................................................. 46, 52

*Hudson v. City of Chicago*, 374 F.3d 554 (7th Cir. 2004).......................................... 28

*Hulse v. Ind. State Fair*, 94 N.E.3d 726 (Ind. Ct. App. 2018) ................................... 43

*Ind. Bureau of Motor Vehicles v. Simmons*,
    233 N.E.3d 1016 (Ind. Ct. App. 2024), *trans. denied* ............................................ 31

*Ind. High Sch. Athletic Ass'n, Inc. v. Carlberg by Carlberg*,
    694 N.E.2d 222 (Ind. 1997) .................................................................................... 30

*Irwin Mortg. Corp. v. Marion Cnty. Treasurer*,
    816 N.E.2d 439 (Ind. Ct. App. 2004).................................................................... 13

*Johnson v. State*, 827 N.E.2d 547 (Ind. 2005) .......................................................... 14

*Jones v. Brown*, 300 F. Supp. 2d 674 (N.D. Ind. 2003)........................................ 21, 22

*In re Kemmler*, 136 U.S. 436 (1890) ......................................................................... 40

*Ky. Dept. of Corr. v. Thompson*, 490 U.S. 454 (1989) .......................................... 25, 39

*Lambert v. Buss*, 498 F.3d 446 (7th Cir. 2007) ......................................................... 13

*Loving v. Virginia*, 388 U.S. 1 (1967)........................................................................ 31

*Mathews v. Eldridge,* 424 U.S. 319 (1976)..................................................... 28, 29, 30

*McDonald v. Chicago*, 561 U.S. 742 (2010) .............................................................. 31

*McIntosh v. Melroe Co.*, 729 N.E.2d 972 (Ind. 2000) ................................................ 24

*Miller v. Patel*, 212 N.E.3d 639 (Ind. 2023) ............................................................. 29

State of Indiana
Response in Opposition to Successive Post-Conviction Review

*Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271 (1984)................. 18, 21, 43

*Montgomery v. Anderson*, 262 F.3d 641 (7th Cir. 2001)............................. 25

*Moore v. State*, 771 N.E.2d 46 (Ind. 2002) ................................... 14

*Morrissey v. Brewer*, 408 U.S. 471 (1972) .................................... 47

*Murray's Lessee v. Hoboken Land & Improvement Co.*,
    59 U.S. (18 How.) 272 (1856) .............................................. 26

*Myers v. State*, 839 N.E.2d 1154 (Ind. 2005) .......................... 24, 34, 38, 42

*In re Ohio Execution Protocol Litig.*,
    2017 WL 3033629 (S.D. Ohio July 18, 2017) ........................... 50

*Okla. Observer v. Patton et al.*, 73 F. Supp. 3d 1318 (W.D. Okla. 2014) ................. 51

*Olim v. Wakinekona*, 461 U.S. 238 (1983) ................................... 27

*Orozco v. Dart*, 64 F.4th 806 (7th Cir. 2023) ............................... 29

*Pell v. Procunier*, 417 U.S. 817 (1974) ................................... 43, 44, 48, 49

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983)..................... 44

*Powers v. Summers*, 226 F.3d 815 (7th Cir. 2000) .................................... 15

*Preiser v. Rodriguez*, 411 U.S. 475 (1973)................................... 48

*Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984)................................... 45

*Press-Enterprise Co. v. Superior Court of Cal., County of Riverside*,
    478 U.S. 1 (1986) ............................................. 42, 45, 49, 51

*Rice v. Kempker*, 374 F.3d 675 (8th Cir. 2004) ........................... 48

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) ............................ 45, 47

*Riddle v. Khan*, 168 N.E.3d 1017 (Ind. Ct. App. 2021) ........................... 13

*Rochin v. California*, 342 U.S. 165 (1952) ........................... 32, 33

*Senco Prod., Inc. v. Riley*, 434 N.E.2d 561 (Ind. Ct. App. 1982) ................ 36

*Sepulvado v. Jindal*, 729 F.3d 413 (5th Cir. 2013)................................... 25, 27

*Shakur v. Hendrix*, 234 N.E.3d 194 (Ind. Ct. App. 2024) ........................... 24

State of Indiana
Response in Opposition to Successive Post-Conviction Review

*Shang v. Jurich*, 681 F.2d 1091 (7th Cir. 1982) ......................................................... 27

*Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535 (1942) .................................. 31

*Smith v. Ark. State Highway Emps., Local 1315*, 441 U.S. 463 (1979) ..................... 43

*Smith v. Shettle*, 946 F.2d 1250 (7th Cir. 1991) ......................................................... 27

*Snowden v. Hughes*, 321 U.S. 1 (1944) ................................................................. 26, 27

*Snyder v. Nolen*, 380 F.3d 279 (7th Cir. 2004) ............................................... 17, 18, 22

*State v. Clark*, 1996 WL 33324127 (Del. Super. Ct. Apr. 11, 1996) .......................... 39

*Swarthout v. Cooke*, 562 U.S. 216 (2011) (per curiam) ............................................. 26

*Timbs v. Indiana*, 586 U.S. 146 (2010) ...................................................................... 31

*United States v. Yonkers Bd. of Educ.*, 747 F.2d 111 (2d Cir. 1984)......................... 48

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ....................................................... 31

*We the People Found., Inc. v. United States*, 485 F.3d 140 (D.C. Cir. 2007) ............ 21

*Wellons v. Comm'r, Ga. Dep't of Corr.*, 754 F.3d 1260 (11th Cir. 2014) ....... 13, 25, 27

*Whitaker v. Collier*, 862 F.3d 490 (5th Cir. 2017)................................................. 13, 36

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) .............................................. 15

*Williams v. Hobbs*, 658 F.3d 842 (8th Cir. 2011) ................................................... 26, 27

*Wolff v. McDonnell*, 418 U.S. 539 (1974) ............................................................. 25, 47

*Zablocki v. Redhail*, 434 U.S. 374 (1978)................................................................... 30

*Zink v. Lombardi*, 783 F.3d 1089 (8th Cir. 2015)....................................................... 36

**Statutes**

42 U.S.C. § 1983................................................................................................*passim*

42 U.S.C. § 1997e(a)...................................................................................................... 13

Ind. Code ch. 5-14-3 ................................................................................................ 27, 30

Ind. Code § 5-14-3-9(c) ................................................................................................. 33

USDC IN/ND case 3:25-cv-00798-CCB    document 1-16    filed 09/18/25    page 8 of 54
State of Indiana
Response in Opposition to Successive Post-Conviction Review

Ind. Code § 5-14-3-9(e) ..................................................................................... *passim*

Ind. Code § 5-14-3-9(f) ...................................................................................... 22

Ind. Code § 5-14-3-9(k) ...................................................................................... 22

Ind. Code § 5-14-3-9(l) ....................................................................................... 22

Ind. Code § 34-13-3-3 ......................................................................................... 15

Ind. Code § 34-13-3-5(a) ..................................................................................... 15

Ind. Code § 34-13-3-5(f) ...................................................................................... 15

Ind. Code § 34-13-4-3 ......................................................................................... 15

Ind. Code § 35-38-6-1(e) ..................................................................................... 36

Ind. Code § 35-38-6-1(f) ...................................................................................... 20

Ind. Code § 35-38-6-6(a)(7) ..................................................................... 38, 39, 44

Ind Code § 35-38-6-6(d) ............................................................................... 38, 40

## Other Authorities

Ind. Appellate Rule 46(A)(8) ....................................................................... 29, 36

Ind. Appellate Rule 46(C) .................................................................................. 36

Ind. Post-Conviction Rule 1(1)(a) ...................................................................... 11

Ind. Post-Conviction Rule 1(1)(b) ...................................................................... 11

Ind. Post-Conviction Rule 1(1)(c) ...................................................................... 11

Ind. Post-Conviction Rule 1(1)(e) ...................................................................... 11

Ind. Post-Conviction Rule 1(6) ........................................................................... 11

Ind. Post-Conviction Rule 1(10) ......................................................................... 12

Ind. Post-Conviction Rule1(2) ............................................................................ 15

Ind. Trial Rule 75 ................................................................................................ 16

State of Indiana
Response in Opposition to Successive Post-Conviction Review

Banner, *The Death Penalty: An American History*, Harvard University Press 2002, 154, 156 ................................................................................................................. 50

Casey Smith, *Death row inmate Joseph Corcoran executed for quadruple murder*, Indiana Capital Chronicle, Dec. 18, 2024, https://indianacapitalchronicle.com/2024/12/18/death-row-inmate-joseph-corocoran-executed-for-quadruple-murder ............................................................ 44

Casey Smith, *State executes death row inmate Benjamine Ritchie for fatal shooting of police officer*, Indiana Capital Chronicle, May 20, 2025, https://indianacapitalchronicle.com/2025/05/20/state-executes-death-row-inmate-benjamin-ritchie-for-fatal-shooting-of-police-officer/ ............................................ 44

Dawn Mitchell, *A History of Executions in Indiana*, IndyStar (Dec. 11, 2019), https://www.indystar.com/story/news/2019/12/11/indiana-executions-full-list-peopleexecuted-since-1897/4357164002/ ................................................................ 50

Michael Madow, *Forbidden Spectacle: Executions, the Public and the Press in Nineteenth Century New York*, 43 Buff. L.Rev. 461, 557 (1995) ........................... 50

U.S. Const. amend. I ................................................................................................ 17

U.S. Const. amend. VIII ........................................................................................... 34

State of Indiana
Response in Opposition to Successive Post-Conviction Review

This Court should deny Roy Lee Ward's request to file a successive petition for post-conviction relief and grant the State's motion to set his execution date. Most, if not all, of Ward's civil-rights claims are non-cognizable under the post-conviction rules when he is not challenging the validity of his conviction or sentence. And none of his claims have any substantial merit such that he has proved a reasonable possibility of success and is deserving of a second round of post-conviction litigation. The State has not infringed on his rights under the First Amendment or due-process protections because the Department of Correction has not yet responded to his attorney's public-record requests. Ward's allegation of cruel and unusual punishment is facially deficient for failing to allege an alternative method of execution, and his argument that the current method is unconstitutional is based on nothing but raw speculation. And he is not entitled to relief because his witnesses will not be able to hear him or because he will not be able to visually verify the attendance of his witnesses—neither of those allegations rise to a constitutional deprivation. This Court should deny him permission to file a successive petition for post-conviction relief.

## I.
## The post-conviction rules do not permit civil-rights claims.

This Court should deny Ward permission to pursue claims that are improper under the post-conviction rules. Ward is not attacking the validity of his conviction or sentence, which are the only claims permitted by the post-conviction rules. And nothing in the rules allows a petitioner to obtain the type of injunctive relief Ward requests. Rather, the remedy for a prevailing post-conviction petitioner is a new

State of Indiana
Response in Opposition to Successive Post-Conviction Review

trial or sentencing hearing. Further, even if he obtained relief on any of his claims, that relief would not be implemented by the State as an entity. It would be implemented by the Commissioner of the Department of Correction or the Warden of the Indiana State Prison or some other proper party. Ward cannot show a reasonable possibility of success on claims that have been brought in a wholly improper way. He should not be granted another round of post-conviction review.

The post-conviction rules do not permit the civil-rights claims that Ward is attempting to raise. All of them seek to vindicate some constitutional right and necessarily ask for injunctive relief. But the post-conviction rules only permit challenges to a "conviction or sentence," not to the method by which sentences are carried out. Ind. Post-Conviction Rule 1(1)(a). The rules specifically say that they are the exclusive means to challenge "the *validity* of the conviction or sentence[.]" P-C.R. 1(1)(b) (emphasis added); *see also* P-C.R. 1(1)(c) (providing that petitions for writs of habeas corpus challenging "the validity of [a] conviction or sentence" are petitions for post-conviction relief); P-C.R. 1(1)(e) ("A petition seeking to present new evidence challenging the person's guilt or the appropriateness of the person's sentence …").

Further, Post-Conviction Rule 1(6) dictates rules for judgments in post-conviction cases and requires the post-conviction court to "enter an appropriate order with respect to the conviction or sentence *in the former proceedings*[.]" P-C.R. 1(6) (emphasis added). The relief Ward requests would do nothing to affect the sentence imposed in his former proceedings but would only affect the execution of

State of Indiana
Response in Opposition to Successive Post-Conviction Review

that sentence in the here and now. Also consider that Post-Conviction Rule 1(10) discusses subsequent prosecution upon a petitioner obtaining relief; Ward obtaining relief would not lead to any subsequent prosecution, further proving that the post-conviction rules do not contemplate the claims he is attempting to raise.

If they did, then post-conviction would become the forum for a host of challenges to the conditions of confinement. Challenges to confinement conditions are proceedings that review *how* the Department of Correction is executing the sentences of non-capital inmates. Should this Court allow capital inmates to make challenges to *how* the Department of Correction is executing a capital sentence, then there is no reason to limit those challenges when made by non-capital inmates. Ward has provided no authority in which the post-conviction rules allow a challenge to the conditions of confinement.

The paucity of precedent allowing such challenges is likely due to the existence of a well-known and often-used mechanism for making such challenges. Those challenges are properly brought under 42 U.S.C. § 1983. *See Culver-Union Twp. Ambulance Serv. v. Steindler*, 629 N.E.2d 1231, 1233 (Ind. 1994) (citing *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979)) (Section 1983 "provides the procedure for enforcing substantive federal rights."). If an inmate (or any other person) believes that he has suffered "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws," he can bring a suit under § 1983. Section 1983 suits to bring the civil-rights claims included in Ward's proposed petitions are by no means uncommon, especially in capital cases. *See, e.g.,*

State of Indiana

Response in Opposition to Successive Post-Conviction Review

*Barr v. Lee*, 591 U.S. 979 (2020) (per curiam) (vacating a preliminary injunction

granted in a civil-rights suit challenging the use of pentobarbital as cruel and

unusual under the Eighth Amendment); *Whitaker v. Collier*, 862 F.3d 490 (5th Cir.

2017) (affirming the dismissal of a § 1983 suit lodging an Eighth Amendment

methods-of-execution challenge); *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779

F.3d 1275, 1278 (11th Cir. 2015) ("Gissendaner's § 1983 complaint contains a series

of allegations about Georgia's lethal injection protocol and the State's refusal to

reveal certain details about its execution process."); *Wellons v. Comm'r, Ga. Dep't of

Corr.*, 754 F.3d 1260, 1266 (11th Cir. 2014) (rejecting a § 1983 claim that

"Defendants' refusal to provide him with information regarding his execution denies

him his First Amendment right of access to governmental proceedings"); *Lambert v.

Buss*, 498 F.3d 446, 498 (7th Cir. 2007) (affirming the denial of a stay in a § 1983

challenge to Indiana's method of execution).

Section 1983 is the proper method by which Ward can raise his civil-rights

claims, not post-conviction proceedings. Of course, Ward must satisfy certain pre-

requisites. *See, e.g.*, 42 U.S.C. § 1997e(a) (exhaustion requirement); *Riddle v. Khan*,

168 N.E.3d 1017, 1023 (Ind. Ct. App. 2021) (citing *Irwin Mortg. Corp. v. Marion

Cnty. Treasurer*, 816 N.E.2d 439, 443 (Ind. Ct. App. 2004)) ("The statute of

limitations for a § 1983 claim is governed by the personal injury statute of

limitations of the state where the alleged injury occurred."). But a proper route to

the requested relief exists. Ward has inexplicably not taken that route but is

State of Indiana

Response in Opposition to Successive Post-Conviction Review

attempting to improperly force review of those claims under the post-conviction

rules where they do not belong.[1]

Not only do the post-conviction rules not permit almost all of the types of

claims that Ward is proposing, but the remedies should those claims be successful

are not permitted under the rules. Should he be given permission to litigate these

claims, he will be asking for the post-conviction court to force the Department of

Correction to answer his public-record requests, prevent his execution until the

State proves to Ward's assurance that he will not be subject to cruel and unusual

punishment, provide a different type of glass in the witness room of the execution

chamber, and construct a means by which Ward can communicate with the

witnesses viewing his execution (S.P-C.R. 4–19). The post-conviction rules provide

no authority for a post-conviction court to order a public agency to respond to an

APRA request or to start construction on a new execution chamber at the Indiana

State Prison. Ward has identified no authority that injunctive relief is available

under the post-conviction rules, and the State has found none—again, likely

because that relief is available under § 1983.

---

[1] The State recognizes that this Court has traditionally addressed the merits of method-of-execution claims under the Eighth Amendment in the post-conviction context. *See, e.g.*, *Bieghler v. State*, 839 N.E.2d 691 (Ind. 2005); *Johnson v. State*, 827 N.E.2d 547 (Ind. 2005); *Moore v. State*, 771 N.E.2d 46 (Ind. 2002). The Court has never explicitly condoned the post-conviction rules as a route to raise challenges to methods of execution. The State believes for the reasons argued that those types of claims asking for injunctive relief, which would not result in the invalidation of a conviction or sentence, are a poor fit for post-conviction review given the limited relief provided under the rules but recognizes the Court's past practice. Ward does raise such a claim, and the State will show why it is wholly meritless below.

State of Indiana
Response in Opposition to Successive Post-Conviction Review

In addition to Ward's claims and desired remedies finding no home in the post-conviction rules, he is proceeding against the wrong party and, should he be allowed to proceed, in the wrong forum. The respondent in this action is the State of Indiana. Ward is bringing civil-rights claims against it. The Eleventh Amendment bars civil-rights suits against a state because a state is not a "person" subject to liability under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989); *Powers v. Summers*, 226 F.3d 815, 817–18 (7th Cir. 2000) ("A suit against a state official in his or her official capacity is a suit against the state, and so is barred by the Eleventh Amendment unless … the state has waived its Eleventh Amendment immunity from suit in federal court."). And state statutes bar actions against individuals acting within the scope of their government employment and also expressly disclaim any consent to suit or waiver of the State's sovereign immunity. *See* I.C. §§ 34-13-3-5(a), 34-13-3-5(f), 34-13-4-3, 34-13-3-3. The person that would have to comply with any ordered remedy that Ward could obtain should he succeed on any of the claims in his proposed petition would likely be the Warden of the Indiana State Prison. And the Warden is not involved in post-conviction matters— the State of Indiana is the only other party.

Further, Ward would likely be in the incorrect forum if he should be allowed a second round of post-conviction litigation. The forum for a post-conviction petition is the court of conviction, which, here, would be Spencer County. P-C.R. 1(2). But Ward is seeking relief against the Commissioner of the Department of Correction or the Warden of the Indiana State Prison, and Ward is being held in LaPorte County;

State of Indiana
Response in Opposition to Successive Post-Conviction Review

none of those people are situated in Spencer County, and venue may not be proper
or preferred there. *See* Ind. Trial Rule 75. This again shows that the claims Ward is
attempting to bring are not proper under the post-conviction rules.

In all, this Court should not allow Ward to proceed on his claims because they
are not permitted under the post-conviction rules; the remedy he requests is not
authorized by the post-conviction rules; and he is proceeding against the wrong
party. For these reasons, he cannot prove a reasonable possibility of success such
that this Court should grant him permission to file a successive petition for post-
conviction relief. His request should be denied on this basis alone.

## II.
### None of Ward's claims have any reasonable possibility of success.
### He should be denied another round of post-conviction review.

Ward's proffered successive post-conviction claims present no reasonable
possibility of success. Several highlight why post-conviction relief is improper. All
should be rejected because they are meritless. Under the Indiana Constitution,
Ward has waived all claims by failing to present an argument separate from the
federal constitution. Under the federal constitution, he has failed to show a
violation of his rights under the First, Eighth, or Fourteenth Amendments. All five
of his arguments fail: His right to access the courts to redress grievances has not
been obstructed. His substantive and procedural due process rights have not been
violated. His execution by lethal injection of pentobarbital is not cruel or unusual.
And any limitations on audio and visual access between Ward and his witnesses

State of Indiana
Response in Opposition to Successive Post-Conviction Review

constitute no constitutional infringement. This Court should deny his request to file a successive petition for post-conviction relief.

**A. Claim 1 (Paragraphs 8(A) & 9(A)): Ward's First Amendment rights have not been and will not be violated by the Department of Correction's response to his public-record requests.**

Ward's First Amendment right to petition the government for redress of grievances has not been violated by the timeliness of the Department of Correction's response to his attorney's recent flurry of public-record requests.[2] "The right of individuals to pursue legal redress for claims that have a reasonable basis in law or fact" is protected by the First Amendment right to petition the government for redress of grievances. *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004); *see also* U.S. Const. amend I. The U.S. Supreme Court has held that the First Amendment right to petition the government includes the right to file civil actions in court that have a reasonable basis in law or fact. *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 741 (1983) ("The right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances."); *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition."). To that end, courts have held that the "right of access to the courts is the right of an individual,

---

[2] In none of the three public-record requests attached to Ward's proposed petition is the box checked on the form indicating that his attorney is seeking the records request on behalf of another person (Resp. Exs. F, G, H). The State is unaware of any public-record request personally made by Ward or made explicitly on his behalf.

State of Indiana

Response in Opposition to Successive Post-Conviction Review

whether free or incarcerated, to obtain access to the courts without undue interference." *Snyder*, 380 F.3d at 291.

The right to petition the government for redress of grievances, or the right of access to the courts, is not the right to raise a particular legal claim or the right to succeed on the merits of a particular argument. *See Am. Bus Ass'n v. Rogoff*, 649 F.3d 734, 739–40 (D.C. Cir. 2011) (citing *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 286 (1984)) ("Although the First Amendment surely 'protects the right of an individual to speak freely, to advocate ideas, to associate with others, and to petition his government for redress of grievances, nothing in the First Amendment … suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues.'"). Rather, it is the right to get into court and secure a judicial ruling. *See Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002). ("Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong.").

In this case, Ward alleges that the Department of Correction's "refusal to answer Ward's public-record requests about its lethal injection protocol actively conceals his access to public information not shielded from disclosure by statute and actively obstructs his ability to challenge the constitutionality of his execution in court" (S.P-C.R. 4). In other words, Ward claims that the Department of Correction

State of Indiana
Response in Opposition to Successive Post-Conviction Review

is unduly interfering with his ability to collect information about the lethal-injection

protocol which, in turn, somehow prevents him from being able to discover potential

claims challenging the way the State intends to carry out his execution which, in

turn, prevents him from filing a lawsuit challenging Indiana's method of execution.

Ward's claim is meritless. Ward's attorneys have submitted three public-

record requests to the Department of Correction under APRA (S.P-C.R. 8–9).

Specifically, Ward's attorneys have requested information about "any and all drugs"

the Department of Correction has in its possession intended for use in executions

including: the number of vials it possesses; the size of each vial and the

concentration of lethal drug in each vial; their expiration dates; inventory logs or

chain of custody documents for each drug; documents related to the date of

purchase; the amount of money the Department of Correction paid for the lethal-

injection drugs; the financial documents related to those purchases; information

about the retention, storage, and maintenance of the lethal-injection drugs; the

certificates of analyses for any testing done on the lethal-injection drugs; all

documents related to the quality and testing of the lethal-injection drug intended

for use in Ward's execution; "all DEA Form 222's from June 2024 to present"; any

and all DEA Form 41's for lethal-injection drugs the Department of Correction has

destroyed since May 2024; and documents concerning the obligation to comply with

State of Indiana
Response in Opposition to Successive Post-Conviction Review

Indiana's competitive bidding law (S.P-C.R. 9–10).[3] According to Ward, the

Department of Correction has not answered those requests (S.P-C.R. 10).

Assuming for the sake of argument that Ward's attorneys' public-record

requests do not implicate Indiana's confidentiality statute and that the Department

of Correction could provide a response to his requests by redacting information that

might violate the confidentiality statute, Ward's First Amendment rights have not

been violated because the Department of Correction is not unduly interfering with

Ward's ability to access the courts and Ward has judicial remedies at his disposal to

either compel the disclosure of the information he seeks or litigate his underlying

method-of-execution claim.[4]

---

[3] According to Ward, pentobarbital, as a schedule II controlled substance, is regulated by the Drug Enforcement Agency which requires the completion of DEA Form 222 when the controlled substance is sold or transferred and the completion of DEA Form 41 when the controlled substance is destroyed (S.P-C.R. 8).

[4] The confidentiality statute, found in Indiana Code Section 35-38-6-1(f), provides that:

The following are confidential, are not subject to discovery, and may not be introduced as evidence in any civil or criminal proceeding:

(1) The identity of a person described in subsection (e) that enters into a contract with the department of correction under subsection (e) for the issuance or compounding of lethal substances necessary to carry out an execution by lethal injection.

(2) The identity of an officer, an employee, or a contractor of a person described in subdivision (1).

(3) The identity of a person contracted by a person described in subdivision (1) to obtain equipment or a substance to facilitate the compounding of a lethal substance described in subsection (e).

State of Indiana

Response in Opposition to Successive Post-Conviction Review

As an initial point, courts have been clear that the right to petition the government for redress of a grievance is not absolute, and the First Amendment "does not guarantee a favorable response, or indeed any response, from state officials." *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003); *see also Knight*, 465 U.S. at 285; *We the People Found., Inc. v. United States*, 485 F.3d 140, 143 (D.C. Cir. 2007) ("Plaintiffs contend that they have a right under the First Amendment to receive a government response to or official consideration of a petition for a redress of grievances. We disagree."); *Jones v. Brown*, 300 F. Supp. 2d 674, 679 (N.D. Ind. 2003) ("[T]he First Amendment right to petition the government for a redress of grievances protects a person's right to complain to the government that the government has wronged him, but it does not require that a government official respond to the grievance."). But even more importantly, the First Amendment right to redress of grievances "is satisfied by the availability of a judicial remedy." *Baltoski*, 300 F. Supp. 2d at 811 (citing *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982)). And Ward's attorneys have judicial remedies at their

---

(4) Information reasonably calculated to lead to the identity of a person described in this subsection, including a:

    (A) name;
    (B) residential or business address;
    (C) residential or office telephone number; and
    (D) Social Security number or tax identification number.

This subsection applies retroactively to any request for information, discovery request, or proceeding, no matter when made or initiated.

State of Indiana
Response in Opposition to Successive Post-Conviction Review

disposal to address their public-record requests that they have, for some reason, not

attempted to secure through the proper channel.

APRA includes an enforcement mechanism Ward's attorneys can take

advantage of to compel the disclosure of the information they have requested, so

long as that information is subject to disclosure. Ward's attorneys submitted public-

record requests on May 8, 2025, June 9, 2025, and July 14, 2025 (Resp. Exs. F, G,

H). Indiana Code Section 5-14-3-9(e) provides that a person who has been denied

the right to inspect or copy a public record by a public agency "may file an action in

the circuit or superior court of the county in which the denial occurred to compel the

public agency to permit the person to inspect and copy the public record." I.C. § 5-

14-3-9(e). The reviewing court is required to "determine the matter de novo, with

the burden of proof on the public agency to sustain its denial." I.C. § 5-14-3-9(f). Any

hearing held on an action filed under that section must be expedited. I.C. § 5-14-3-

9(l). And, in the event the reviewing court affirms the public agency's decision to

deny the disclosure, subsection (k) makes that denial appealable. I.C. § 5-14-3-9(k).

So APRA provides an available judicial remedy Ward can use to compel the

disclosure of the information his attorneys have requested.

The availability of that judicial remedy is fatal to Ward's First Amendment

claim. *See Baltoski*, 300 F. Supp. 2d at 811; *see also Snyder*, 380 F.3d at 292–93

(Easterbrook, J., concurring in judgment) ("My point is not that the opportunity to

litigate in state court is the process 'due' for a completed wrong. … Instead my point

is that opportunities to correct mistakes before a suit reaches its conclusion means

State of Indiana
Response in Opposition to Successive Post-Conviction Review

that there is no constitutional problem in the first place."). Put simply, the

Department of Correction has not interfered with Ward's ability to petition the

government for redress of grievances or access the courts. Ward has judicial

remedies at his disposal through APRA to seek review of that determination and

the opportunity to develop his claims. He has simply failed to take advantage of

them. Moreover, as discussed above, Ward could file a federal lawsuit under § 1983

challenging Indiana's method of execution and engage in discovery with the

Department of Correction about its lethal-injection protocol. But he has not taken

advantage of that judicial remedy either. Ultimately, no one is preventing Ward

from litigating Indiana's chosen method of execution. Ward is just in the wrong

court seeking the wrong relief. Ward's First Amendment right to petition the

government for redress of grievances has not been violated, and this Court should

deny his request to file a successive petition for post-conviction relief to pursue this

claim.

**B.  Claim 2 (Paragraphs 8(B) & 9(B)): Ward's procedural and substantive due process rights under the federal constitution have not been and will not be violated by his execution or the State's response to his public-record requests.[5]**

Ward has failed to show a violation of his due process rights under the

Fourteenth Amendment of the U.S. Constitution. His procedural due process claim

---

[5] Ward has waived any claim under the Indiana Constitution by failing to present a cogent argument. Though he mentions the state constitution in his argument heading, he does not make a separate argument or analysis under the Indiana Constitution (S.P.C.R. 11–12). Where, as here, "a party, though citing Indiana constitutional authority, presents no separate argument specifically treating and analyzing a claim under the Indiana Constitution distinct from its federal

State of Indiana
Response in Opposition to Successive Post-Conviction Review

fails because he has not identified a constitutionally protected liberty interest, and because he has a process to vindicate such an interest if it existed. His substantive due process claim fails because he has not identified a fundamental right or identified State behavior so shocking that it rises to the level of a constitutional violation.

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." It "guarantee[s] procedural and substantive due process." *McIntosh v. Melroe Co.*, 729 N.E.2d 972, 975 (Ind. 2000). Procedural due process protects against the "denial of fundamental procedural fairness." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998). Substantive due process protects against arbitrary and oppressive government action. *Id.* Whether the requirements of due process have been satisfied is a question of law. *Holmes v. Randolph*, 610 N.E.2d 839, 844 (Ind. 1993).

### 1. Procedural Due Process

Ward's procedural due process claim fails at the outset because he has not identified a constitutionally protected interest. Courts examine procedural due process claims in two steps. *Shakur v. Hendrix*, 234 N.E.3d 194, 202 (Ind. Ct. App. 2024). The first step considers whether the State has deprived the person of a recognized property or liberty interest, and the second step examines what process is due and whether the procedures used by the State comport with due process. *See,*

---

counterpart, we resolve the party's claim on the basis of federal constitutional doctrine and express no opinion as to what, if any, differences there may be under the Indiana Constitution." *Myers v. State*, 839 N.E.2d 1154, 1158 (Ind. 2005).

State of Indiana
Response in Opposition to Successive Post-Conviction Review

*e.g.*, *Ky. Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). Courts look to the source of the liberty interest, either the Due Process Clause or other relevant law, to determine if the person has a legitimate claim of entitlement. *See, e.g.*, *Thompson*, 490 U.S. at 460; *Wolff v. McDonnell*, 418 U.S. 539, 557–58 (1974); *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Roth*, 408 U.S. at 569. So if neither a liberty nor a property interest is at stake, then the State may "use any procedures it chooses, or no procedures at all." *Montgomery v. Anderson*, 262 F.3d 641, 644 (7th Cir. 2001).

Making requests and receiving responses under APRA is not a constitutionally protected interest. Ward does not argue that his liberty interest springs from the Due Process Clause under the Fourteenth Amendment (S.P-C.R. 11–12). That makes sense given the weight of circuit authority against that argument. Several circuits have endorsed the view that a defendant does not have a constitutional due-process right to receive information about lethal-injection protocols. *See Wellons*, 754 F.3d at 1267 (holding that the First, Fifth, and Fourteenth Amendments did not give a petitioner the right to know specific information about the lethal-injection protocol); *Sepulvado v. Jindal*, 729 F.3d 413, 420 (5th Cir. 2013) ("There is no violation of the Due Process Clause from the uncertainty that Louisiana has imposed on Sepulvado by withholding the details of

State of Indiana
Response in Opposition to Successive Post-Conviction Review

its execution protocol."); *Williams v. Hobbs*, 658 F.3d 842, 852 (8th Cir. 2011)

(holding that the prisoners, who argued that the Arkansas Method of Execution Act

violated the Due Process Clause because its secrecy denied them "an opportunity to

litigate" their claim that the execution protocol violated the Eighth Amendment,

failed to state a plausible due-process claim).

Instead, Ward claims that his liberty interest springs from "his right to use

state law, in this case Indiana's public records statute, to request and receive public

information about the protocol to be used to execute him to ensure" constitutional

compliance (S.P-C.R. 11). At bottom, his argument is that failure to adhere to a

state procedural statute amounts to a violation of the Due Process Clause. Even

assuming a violation of state law, Ward's argument fails because the "[m]ere

violation of a state statute does not infringe the federal Constitution." *Archie v. City

of Racine*, 847 F.2d 1211, 1216–17 (7th Cir. 1988) (*en banc*) (citing *Snowden v.

Hughes*, 321 U.S. 1, 11 (1944)). To be sure, there is a certain logic to reading the

phrase "due process of law" as meaning that when procedures required by state law

are not followed, a person has not received the process due under the law, and

"there is some historical support for such a view … at least to the extent 'law' meant

procedures established by law." *Archie*, 847 F.2d at 1216 (citing *Murray's Lessee v.

Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272 (1856)).

But for more than a century the U.S. Supreme Court has rejected the notion

that a violation of state law equates to a violation of federal due process. *See

Swarthout v. Cooke*, 562 U.S. 216, 221–22 (2011) (per curiam); *Davis v. Scherer*, 468

State of Indiana
Response in Opposition to Successive Post-Conviction Review

U.S. 183, 193–96 (1984); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982); *Snowden*, 321 U.S. at 11; *Hebert v. Louisiana*, 272 U.S. 312, 316 (1926); *Barney v. City of New York*, 193 U.S. 430, 438 (1904); *see also Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Archie*, 847 F.2d at 1216–18. The Due Process Clause does not require a state to obey its own laws, though it is obviously a good idea for a state to do so. *Archie*, 847 F.2d at 1216–17. Thus, even if the State violated APRA by not responding to Ward's requests, that does not mean that the Due Process Clause has been violated. *See Wellons*, 754 F.3d at 1267; *Sepulvado*, 729 F.3d at 420; *Williams*, 658 F.3d at 852.

The Due Process Clause is not automatically triggered even if a state statute entitles one to a response or some other procedure. APRA is a state statute that creates a procedure for obtaining public information. I.C. ch. 5-14-3. And state procedural requirements are not a source of federal constitutional entitlements. *See Olim v. Wakinekona*, 461 U.S. 238, 250–51 (1983); *Hewitt v. Helms*, 459 U.S. 460, 471 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *Smith v. Shettle*, 946 F.2d 1250, 1254 (7th Cir. 1991); *Archie*, 847 F.2d at 1217; *Shang v. Jurich*, 681 F.2d 1091, 1100–02 (7th Cir. 1982). So responses to APRA requests are not a constitutionally protected interest.

Ward cites to *Gutierrez v. Saenz*, 145 S. Ct. 2258 (2025), to divine a constitutionally protected interest in a response to a public-record request (S.P.C.R. 11). But that case is readily distinguishable. The *Gutierrez* Court acknowledged that people convicted of a crime in state court have a liberty interest in demonstrating their innocence with new evidence under state law. 145 S. Ct. at

State of Indiana
Response in Opposition to Successive Post-Conviction Review

2265. "For that reason, a state-created right to postconviction procedures can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right." *Id*. (internal citation omitted). The "parent right" in *Gutierrez*, proving one's innocence, does not apply to this case. Ward is not attempting to show his innocence; he is attempting to collect information to then possibly later challenge the method of his execution. Because he has failed to establish a parent right, he cannot show that an APRA response is essential to the realization of that parent right. In sum, Ward has failed to show that APRA requests and responses are constitutionally protected interests under the federal Due Process Clause.

Even if APRA requests and responses were constitutionally protected interests, there would still be no federal procedural due process violation. The U.S. Supreme Court has written that "the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976). APRA itself provides an opportunity to be heard when a person "has been denied the right to inspect or copy a public record." I.C. § 5-14-3-9(e). That person "may file an action in the circuit or superior court of the county in which the denial occurred to compel the public agency to permit the person to inspect and copy the public record." *Id*. Ward has a remedy available to vindicate his interest in an APRA response, he has just failed to use it. Consequently, the State has not violated his due process rights. *See Hudson v. City of Chicago*, 374 F.3d 554, 563 (7th Cir. 2004) ("A state cannot be held to have

State of Indiana
Response in Opposition to Successive Post-Conviction Review

violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them.").

Typically, after a constitutionally protected interest is identified, courts look to the *Mathews* balancing test to determine what process is due. *See Orozco v. Dart*, 64 F.4th 806, 818–19 (7th Cir. 2023) (citing *Mathews*, 424 U.S. at 335) ("The factors in *Mathews* guide our inquiry into whether the County provided constitutionally sufficient process."). That analysis involves balancing the (1) private interest affected by official action, (2) the risk of erroneous deprivation of the interest through the procedures used, and (3) the government's interest. *Mathews*, 424 U.S. at 334–35. But Ward has failed to present this analysis and argument (S.P-C.R. 11–12), so he has waived the issue. *See* App. R. 46(A)(8) (stating that Appellant's argument shall "contain the contentions of the appellant on the issues presented, supported by cogent reasoning" and "must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on"); *see also Miller v. Patel*, 212 N.E.3d 639, 657 (Ind. 2023) (internal citation omitted) ("We will not step in the shoes of the advocate and fashion arguments on his behalf, nor will we address arguments that are too poorly developed or improperly expressed to be understood."); *Harrison v. State*, 707 N.E.2d 767, 777 (Ind. 1999) (holding that additional claims were waived for lack of cogency).

In any case, that test is ill-fitted to this circumstance. Though Ward claims a right to request and receive information under APRA (S.P-C.R. 11), APRA does not provide carte blanche access to information; it allows denial of the requested

State of Indiana

Response in Opposition to Successive Post-Conviction Review

information in various circumstances and for various legitimate reasons. *See* I.C. ch.

5-14-3. To the extent that some process is required to vindicate some right to

government information, APRA already provides that mechanism, which means the

State cannot have denied him whatever process may be due to him. I.C. § 5-14-3-

9(e). Ward has not used the procedure available for challenging the denial of APRA

requests, and there is no evidence showing if, or why, Ward's requests were denied,

so when it comes to *Mathews*, balancing the government's interest is difficult, if not

impossible. Moreover, analyzing the risk of erroneous deprivation is not feasible

either because Ward did not use the procedures available to him. He has failed to

show that his procedural due process rights were violated. This claim has no

reasonable possibility of success.

### 2. Substantive Due Process

Ward's substantive due process claim will not succeed if permitted to be

raised in a successive petition. The doctrine of substantive due process "protects

against arbitrary and oppressive government action," *City of Bloomington Bd. of

Zoning Appeals v. UJEighty Corp.*, 163 N.E.3d 264, 268 (Ind. 2021), and focuses on

the parties' fundamental rights, *Ind. High Sch. Athletic Ass'n, Inc. v. Carlberg by

Carlberg*, 694 N.E.2d 222, 242 (Ind. 1997). "Under federal substantive due process

analysis, the State may not 'directly and substantially' interfere with fundamental

rights." *Freed v. Freed*, 227 N.E.3d 954, 962 (Ind. Ct. App. 2024) (quoting *Zablocki

v. Redhail*, 434 U.S. 374, 387 (1978)), *trans. denied*. When a person challenges a

government action on substantive due process grounds, the level of scrutiny used to

State of Indiana
Response in Opposition to Successive Post-Conviction Review

analyze the act's constitutionality depends on the nature of the right asserted. If a government action infringes on a fundamental right, it must survive strict scrutiny, meaning the action must be narrowly tailored to achieve a compelling state interest. *Id*. When a government action implicates a non-fundamental right, it will be upheld so long as the government has a rational basis for it. *Crafton v. Gibson*, 752 N.E.2d 78, 90 (Ind. Ct. App. 2001).

Ward has not identified a fundamental right protected by substantive due process. The Due Process Clause protects only a "select list" of unenumerated fundamental rights. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 237 (2022). These fundamental rights are "strictly" limited by the U.S. Supreme Court. *Ind. Bureau of Motor Vehicles v. Simmons*, 233 N.E.3d 1016, 1029 (Ind. Ct. App. 2024), *trans. denied*. A right counts as "fundamental" for substantive-due-process purposes only if it is "deeply rooted in our history and tradition" and "essential to our Nation's scheme of ordered liberty." *Dobbs*, 597 U.S. at 237–38 (citing *Timbs v. Indiana*, 586 U.S. 146 (2010); *McDonald v. Chicago*, 561 U.S. 742 (2010); *Washington v. Glucksberg*, 521 U.S. 702 (1997)) (cleaned up).

Ward wholly failed to show that he was deprived of a fundamental right (S.P-C.R. 12). And he would be hard pressed to do so given that APRA was only enacted in 1983. P.L. 19-1983. So it is not the kind of right that is deeply rooted in history or tradition or essential to ordered liberty, like for example, the right to marry, *Loving v. Virginia*, 388 U.S. 1, 87 (1967); to have and raise children, *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 536 (1942); and to marital privacy, *Griswold v.*

State of Indiana
Response in Opposition to Successive Post-Conviction Review

*Connecticut*, 381 U.S. 479, 85 (1965). Without a fundamental right to vindicate, Ward's claim of a substantive-due-process violation must fail.

Not only has Ward failed to identify a fundamental right, he has also failed to identify conduct that would be shocking to the conscious. In cases challenging executive action, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Lewis*, 523 U.S. at 846 (quotation omitted). Executive conduct is constitutionally egregious and arbitrary only if it "shocks the conscience." *Rochin v. California*, 342 U.S. 165, 172 (1952). In a substantive-due-process challenge to executive action, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8. For example, forced stomach pumping used to obtain evidence for use in a criminal prosecution has been held to be sufficiently shocking to the conscious and unconstitutional. *Rochin*, 342 U.S. at 172–73.

The State's insistence that Ward bring his claims in the legally correct matter does not offend the U.S. Constitution. Ward has not even shown that it amounts to a violation of APRA. According to Ward, the State failed to respond to three administrative requests to review or copy public records made by his attorneys for an unidentified purpose and not specifically tied to this or any other litigation (S.P-C.R. 8–10). APRA contemplates and provides a remedy for just this scenario. I.C. § 5-14-3-9(e). After all, APRA informs a person making a public-record request that the request is deemed denied if not responded to within a certain time.

State of Indiana
Response in Opposition to Successive Post-Conviction Review

*See* I.C. § 5-14-3-9(c). But even assuming the Department of Correction has inappropriately failed to respond adequately to an APRA request, Ward's claim fails. Not responding to an administrative request is a far cry from intruding on a person's bodily autonomy as in *Rochin*. A lack of a response could be easily explained by any number of innocent or arguably negligent acts. "[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Lewis*, 523 U.S. at 849.

Ward argues that the State is intentionally withholding information from him to wait out his execution (S.P-C.R. 12). But there is nothing to support such a malicious assertion. Anyone can make a public-record request. Notably, in none of the three public-record requests attached to Ward's proposed petition is the box checked on the form indicating that his attorney is seeking the records on behalf of another person (Resp. Exs. F, G, H). The State is unaware of any public-record requests personally made by Ward or made explicitly on his behalf, so it would have no reason to believe that delaying or denying an APRA request would negatively impact Ward. And the State can assure this Court that Ward's attorneys are not the only citizens interested in information about execution drugs; the Department of Correction has received many public-record requests about them. This is simply not the type of government action evincing egregious, conscious-shocking behavior. And because APRA provides ample judicial remedies, I.C. § 5-14-3-9(e), Ward or his counsel can turn to the courts for relief without waiting for this Court to approve a successive petition containing this inappropriate claim for relief. Ward has failed to

State of Indiana
Response in Opposition to Successive Post-Conviction Review

show that his due process rights were violated. Neither of his due-process claims

has a reasonable possibility of obtaining post-conviction relief. He should not be

allowed to further litigate them.

### C.  Claim 3 (Paragraphs 8(C) & 9(C)): Ward's execution will not constitute cruel and unusual punishment under the federal constitution.[6]

Ward has not alleged a viable Eighth Amendment claim, which means he

cannot show a reasonable possibility of success on the claim such that he should be

granted permission to file a successive petition for post-conviction relief. The Eighth

Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. The

presumption is "that capital punishment is constitutional." *Baze v. Rees*, 553 U.S.

35, 47 (2008) (citing *Gregg v. Georgia*, 428 U.S. 153, 177 (1976)). It necessarily

follows "that there must be a means of carrying it out." *Id.* "Some risk of pain is

inherent in any method of execution—no matter how humane—if only from the

prospect of error in following the required procedure. It is clear, then, that the

Constitution does not demand the avoidance of all risk of pain in carrying out

executions." *Id.* The U.S. Supreme Court "has never invalidated a State's chosen

procedure for carrying out a sentence of death as the infliction of cruel and unusual

punishment." *Id.*

Cases from the U.S. Supreme Court "recognize that subjecting individuals to

a risk of future harm—not simply actually inflicting pain—can qualify as cruel and

---

[6] Ward makes no separate argument under Article 1, Section 16 of the Indiana Constitution thereby waiving any such claim. *Myers*, 839 N.E.2d at 1158.

State of Indiana
Response in Opposition to Successive Post-Conviction Review

unusual punishment." *Id.* at 49. To establish that such exposure violates the Eighth

Amendment, "the conditions presenting the risk must be '*sure or very likely* to cause

serious illness and needless suffering,' and give rise to 'sufficiently *imminent*

dangers.'" *Id.* at 50 (quoting *Helling v. McKinney*, 509 U.S. 25, 33, 34–35 (1993))

(emphasis in original). To prevail, Ward must show a "substantial risk of serious

harm" and an "objectively intolerable risk of harm" that prevent prison officials

from pleading that they were "subjectively blameless for purposes of the Eighth

Amendment." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 842, 846 n.9 (1994)).

Additionally, he must prove a "'feasible, readily implemented' alternative procedure

that would 'significantly reduce a substantial risk of severe pain.'" *Bucklew v.*

*Precythe*, 587 U.S. 119, 124 (2019) (quoting *Baze*, 553 U.S. at 52).

Dispositively, Ward has not alleged an alternative method of execution that

would "significantly reduce a substantial risk of severe pain," even assuming that

the use of pentobarbital actually does pose such a risk, which is fatal to his claim.

*Baze*, 553 U.S. at 52. The proposal of an alternative method is a necessary

allegation to survive even a motion to dismiss a § 1983 claim if Ward had pursued

that proper method of challenge. "[A]n inmate cannot successfully challenge a

method of execution under the Eighth Amendment unless he identifies 'an

alternative that is feasible, readily implemented, and in fact significantly reduces a

substantial risk of severe pain.'" *Bucklew*, 587 U.S. at 127 (quoting *Glossip v. Gross*,

State of Indiana
Response in Opposition to Successive Post-Conviction Review

576 U.S. 863, 877 (2015)) (cleaned up). Ward suggests no alternative method of execution, so his allegation is fatally deficient and should be rejected.[7]

Even so, Ward has not proved that the use of pentobarbital to execute him is cruel and unusual. The U.S. Supreme Court rejected a challenge to pentobarbital as applied to an inmate in *Bucklew*, and the Court found that an inmate was unlikely to succeed on the merits of a method-of-execution challenge to the use of pentobarbital in *Barr*. *See Barr*, 591 U.S. at 980–81; *Bucklew*, 587 U.S. at 137. Chief Justice Roberts writing for the Court in *Barr* noted that pentobarbital "[h]as been used to carry out over 100 executions, without incident," "[h]as been repeatedly invoked by prisoners as a *less* painful and risky alternative to the lethal injection protocols of other jurisdictions," and was sanctioned in *Bucklew*. *Barr*, 591 U.S. at 980–81 (emphasis in original) (citing *Whitaker*, 862 F.3d 490; *Zink v. Lombardi*, 783 F.3d 1089 (8th Cir. 2015); *Gissandener*, 779 F.3d 1275). Ward has both failed to prove the current method is invalid under the Eighth Amendment and that an alternative is available that could be constitutionally employed.

Ward's only basis for the use of pentobarbital being cruel and unusual is witness accounts of Benjamin Ritchie's execution where he apparently struggled

---

[7] He cannot cure this failure in a reply filing. *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 593 n.6 (Ind. 2001) (citing Ind. Appellate Rule 46(A)(8), 46(C); *Senco Prod., Inc. v. Riley*, 434 N.E.2d 561, 569 (Ind. Ct. App. 1982)). While Ward discusses the differences between manufactured and compounded pentobarbital in another claim—a discussion not incorporated into this claim—he does not actually propose one or the other as an alternative method to prevent the infliction of cruel and unusual punishment (*see* S.P-C.R. 5–8, 13–16). Further, state law allows the use of either manufactured or compounded pentobarbital. I.C. § 35-38-6-1(e).

State of Indiana
Response in Opposition to Successive Post-Conviction Review

against his restraints for a few seconds (S.P-C.R. 13–16). Even crediting those witnesses' accounts, this does not rise to cruel and unusual punishment. *Bucklew*, 587 U.S. at 132–33 ("[T]he Eighth Amendment does not guarantee a prisoner a painless death—something that, of course, isn't guaranteed to many people, including most victims of capital crimes."). First, nothing prevented Ritchie from struggling against his restraints voluntarily as opposed to being necessarily caused by a drug reaction. Second, Ward has fallen far short of proving that pentobarbital caused the few-second movement that Ritchie's witnesses say that they saw, and he provides this Court with only unsupported speculation that Ritchie's "reaction [was] inconsistent with the normal effects of unadulterated pentobarbital" (S.P-C.R. 3). And even if the problem were pentobarbital, a few seconds of distress is insufficient to make out a valid Eighth Amendment claim. *Bucklew*, 587 U.S. at 132–33. Ward's teenage victim who he cut nearly in half while raping her surely suffered more than whatever pain or discomfort could be caused by the administration of pentobarbital. *Bucklew*, 587 U.S. at 132–33 ("[A] painless death … isn't guaranteed to many people, including most victims of capital crimes."). This claim has no reasonable possibility of success.

State of Indiana
Response in Opposition to Successive Post-Conviction Review

**D.  Claim 4 (Paragraphs 8(D) & 9(D)): The execution chamber's viewing glass for witnesses does not violate Ward's federal due process rights and is not cruel and unusual punishment.[8]**

Ward cannot establish that his right to due process is violated by the statutory procedure for permitting witnesses during his execution; therefore, he cannot demonstrate a reasonable possibility of success on this claim. Indiana Code Section 35-38-6-6(a)(7) permits Ward to designate five people who may be witnesses to his execution, but the prison warden may exclude anyone from viewing the execution if the warden determines that their presence would threaten the safety or security of the prison. I.C. § 35-38-6-6(d). If the Warden determines that a witness will be excluded, the determination for the exclusion must be set forth in writing. I.C. § 35-38-6-6(d). The intent of this procedure is to provide the offender with assurance that his or her designated witnesses will be permitted to view the execution unless notified otherwise. Without this notice, the witnesses are not excluded, and the offender is provided with the necessary assurances that the witnesses are permitted to view the execution. Ward's desire for more assurance of compliance with Section 35-38-6-6(a)(7) does not amount to a due-process deprivation.

Additionally, Ward has no due-process right to view his witnesses during his execution. In fact, Ward has no due-process right to have any person view his execution. *See Holden v. Minnesota*, 137 U.S. 483, 491 (1890) (preventing persons

---

[8] Ward makes no separate argument under Article 1, Section 12 of the Indiana Constitution. That results in waiver. *Myers*, 839 N.E.2d at 1158.

State of Indiana
Response in Opposition to Successive Post-Conviction Review

from viewing an execution does not affect the substantial rights of the condemned).

The U.S. Supreme Court has recognized the state's legislative prerogative to

determine who may witness an execution. *Id.* Section 35-38-6-6(a)(7) is merely a

statutory right to designate witnesses. It does not guarantee that those designated

will choose to serve as witnesses, and it does not create a constitutional right to

have those witnesses present. *See Thompson*, 490 U.S. at 463–65 (holding that a

regulation setting forth categories of visitors did not create a liberty interest in

receiving visitors because it "lack[ed] the requisite relevant mandatory language");

*State v. Clark*, 1996 WL 33324127, at 1 (Del. Super. Ct. Apr. 11, 1996) ("[A]

condemned inmate has no constitutional right to have a particular person of his

choice witness his execution"). While Ward has a qualified statutory right to have

witnesses be present at his execution (subject to safety considerations, such as

criminal history (Resp. Ex. A at 2)), he has no right to compel them to attend or to

actually watch the execution process as it is carried out. Then, if Ward has no right

to actually compel a designated witness's attendance or attention because they do

not want to attend or watch, then it cannot be that Ward has a derivative right to

correspondingly view them. Therefore, he can have no derivative right to see them

during the execution.

Ward's arguments to the contrary are unpersuasive. Ward claims that the

Department of Correction's decision to use a one-way mirror in the execution

chamber is arbitrary, and he will have no way of knowing if the Department is

complying with the statutory provision regarding witnesses (S.P-C.R. 16–17). First,

State of Indiana

Response in Opposition to Successive Post-Conviction Review

Ward's claim once again demonstrates that successive post-conviction is not the proper vehicle to raise these claims. In criminal and correctly pled post-conviction relief cases, the State defends the conviction and sentence. Should Ward file a civil lawsuit, he could conduct discovery and assess the Department of Correction's basis for using a one-way mirror. Instead, he speculates, without support or evidence, that it is arbitrary.

Second, the presumption is that the Department of Correction will carry out his execution in accordance with the laws and statutes of the state. Ward makes no allegation that the Department of Correction or Warden will or has any inclination to prevent his designated witnesses from attending the execution. In fact, the statute provides a procedure the Warden must follow when excluding someone from viewing the execution. I.C. § 35-38-6-6(d). Therefore, Ward will be notified if any of his designated witnesses are excluded from the viewing room. And Ward has himself proved that the Department of Correction is permitting designated witnesses to view executions: He has attached multiple affidavits from people who witnessed Ritchie's execution (Resp. Exs. K, L, M, N). This argument has no merit.

Ward's claim that his inability to view his witnesses during the execution constitutes cruel and unusual punishment is also meritless. "Punishments are cruel when they involve torture or a lingering death[.]" *In re Kemmler*, 136 U.S. 436, 447 (1890). But, as noted above, "subjecting individuals to a risk of future harm—not simply actually inflicting pain—can qualify as cruel and unusual punishment." *Baze*, 553 U.S. at 49. Ward's claim falls far short of establishing a "substantial risk

State of Indiana
Response in Opposition to Successive Post-Conviction Review

of serious harm" or an "objectively intolerable risk of harm." *See id.* at 50 (citing

*Farmer*, 511 U.S. at 842, 846, n.9). "Simply because an execution method may result

in pain, either by accident or as an inescapable consequence of death, does not

establish the sort of objectively intolerable risk of harm" that qualifies as cruel and

unusual punishment." *Id.* Ward mush establish that the method creates "an

unacceptable risk of pain." *Glossip*, 576 U.S. at 884. The inability to see designated

witnesses during the execution cannot remotely be characterized as needless

suffering, objectively intolerable, or an unacceptable risk of pain. *See id.* (three-drug

lethal-injection protocol did not create unacceptable risk of pain); *Baze*, 553 U.S. at

62 (finding the risk of maladministration of the lethal injection could not be

characterized as "objectively intolerable").

The Eighth Amendment does not require the State or the Department of

Correction to make Ward's execution as pleasant as possible. As noted above, "the

Eighth Amendment does not guarantee a prisoner a painless death." *Bucklew*, 587

U.S. at 132–33. And "an inmate cannot succeed on an Eighth Amendment claim

simply by showing one more step the State could take as a failsafe for other,

independently adequate measures." *Baze*, 553 U.S. at 60–61. This approach would

serve no meaningful purpose and would frustrate the State's legitimate interest in

carrying out a sentence of death in a timely manner." *Id.* If an additional failsafe is

insufficient to succeed on an Eighth Amendment claim, certainly a claim of

additional comfort and support cannot succeed. *See id.* at 40 (showing the risk of

pain from maladministration was insufficient to constitute cruel and unusual

State of Indiana
Response in Opposition to Successive Post-Conviction Review

punishment). No person, including condemned inmates, have a right to view

designated persons at their death. And Ward presents no authority to the contrary.

Ward's bald assertions are not enough. In fact, Ward may choose not to designate

any witnesses to his execution, and a designated witness may choose not to attend.

Ward cannot establish that preventing him from seeing his designated witnesses

during his execution violates the Eighth Amendment.

### E.  Claim 5 (Paragraphs 8(E) & 9(E)): Ward will not suffer a deprivation of his right to free speech under the federal constitution because witnesses to his execution do not have audio access to the execution chamber.[9]

Ward has not alleged a cognizable First Amendment violation; therefore, he

cannot demonstrate a reasonable possibility of success on this claim. He contends

that his "right to access a governmental proceeding … will be violated if the

witnesses are not able to see and hear the execution in its entirety" (S.-P.-C.R. 18).

Ward's argument fails for several reasons. First, Ward does not have standing to

bring a claim on behalf of witnesses. Second, Ward has no right to be heard. Finally,

while the First Amendment provides members of the public a right to access to

criminal proceedings, *Press-Enterprise Co. v. Superior Court of Cal., County of

Riverside*, 478 U.S. 1, 8–15 (1986) (*Press-Enterprise II*), executions do not constitute

criminal proceedings.

---

[9] Again, Ward has failed to present a cogent argument under the Indiana Constitution. He continues to make bare-bones allegations of a state constitutional violation while only citing to case law supporting his federal constitutional claim and makes no separate argument under the Indiana Constitution (S. P.-C.R. 18–19). He has therefore waived his state constitutional claim. *Myers*, 839 N.E.2d at 1158.

State of Indiana
Response in Opposition to Successive Post-Conviction Review

Ward does not have standing to challenge the witnesses' audio access to the execution. Ward himself will have full access to the execution and seemingly brings this claim on behalf of unidentified witnesses (S.P-C.R. 18–19). But those who believe that the execution statutes or protocols violate their First Amendment rights must file a civil lawsuit themselves and, as Ward acknowledges, have, in fact, done so (S.P-C.R. 19) (referencing *Associated Press et al. v. Neal et al.*, No. 1:25-cv-872-MPB-MJD (S.D. Ind.)). A person only has standing to raise a First Amendment claim on behalf of others where a statute is alleged to be facially overbroad. *See Bigelow v. Virginia*, 421 U.S. 809, 815–16 (1975); *see also Hulse v. Ind. State Fair*, 94 N.E.3d 726, 732 (Ind. Ct. App. 2018). That is not his challenge, so he does not have standing to raise this claim on behalf of unidentified witnesses.

Even if Ward had standing, he has no right to be heard. The First Amendment right to speak does not provide a corresponding right to be heard. *See Smith v. Ark. State Highway Emps., Local 1315*, 441 U.S. 463, 464–65 (1979); *Pell v. Procunier*, 417 U.S. 817, 821–22 (1974); *see also Minnesota Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (noting that "[n]othing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues"); *DeGrassi v. City of Glendora*, 207 F.3d 636, 647 (9th Cir. 2000) (holding that plaintiff's claim that a law firm instructed the city council to ignore his questions during a meeting was a First Amendment violation was frivolous because "the First Amendment does not guarantee that citizens'

State of Indiana
Response in Opposition to Successive Post-Conviction Review

speech will be heard"). Neither does the First Amendment require the government to provide people with a forum to speak. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45–48 (1983). And Ward only retains those First Amendment rights not inconsistent with his status as a prisoner or with the legitimate penal objectives of the corrections system. *Pell*, 417 U.S. at 822.

The government cannot force persons Ward identifies as witnesses under Section 35-38-6-6(a)(7) to attend the execution or listen to Ward's final moments should they choose to attend and he chooses to speak. Witnesses could choose of their own volition not to listen to the execution without government interference and without violating the First Amendment. Further, Ward will be heard by someone: The Department of Correction's protocol calls for certain prison personnel to be present in the execution chamber (Resp. Ex. A at 1, 9–10). The protocol also requires that the Warden record Ward's final words (Resp. Ex. A at 10). *See also* Casey Smith, *State executes death row inmate Benjamine Ritchie for fatal shooting of police officer*, Indiana Capital Chronicle, May 20, 2025, https://indianacapitalchronicle.com/2025/05/20/state-executes-death-row-inmate-benjamin-ritchie-for-fatal-shooting-of-police-officer/ (reporting Benjamin Ritchie's last words); Casey Smith, *Death row inmate Joseph Corcoran executed for quadruple murder*, Indiana Capital Chronicle, Dec. 18, 2024, https://indianacapitalchronicle.com/2024/12/18/death-row-inmate-jospeh-corcoran-executed-for-quadruple-murder (reporting Joseph Corcoran's last words). But the First Amendment does not guarantee that speech will be heard or the

State of Indiana
Response in Opposition to Successive Post-Conviction Review

government will provide a forum to speak. Ward's claim that his witnesses' inability
to hear him during the execution violates the First Amendment must fail.

Even if Ward had the right to be heard, executions are not criminal
proceedings. The right to access criminal proceedings has only been recognized
within this jurisdiction as applying to judicial proceedings. The U.S. Supreme Court
has held "that the right to attend criminal trials is implicit in the guarantees of the
First Amendment[.]" *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580
(1980). But the Court has not extended this beyond proceedings that are a part of a
criminal prosecution. *See id*; *see also Globe Newspaper Co. v. Super. Ct. for Norfolk
Cnty.*, 457 U.S. 596, 610 (1982) (finding a state statute "exclud[ing] the press and
general public from the courtroom during the testimony of [a minor] victim" of a sex
offense was unconstitutional under the First Amendment); *Press-Enterprise Co. v.
Superior Court*, 464 U.S. 501, 511 (1984) (*Press-Enterprise I*) ("Absent consideration
of alternatives to closure, the trial court could not constitutionally close the voir
dire."); *Press-Enterprise II*, 478 U.S. at 13 (concluding "that the qualified First
Amendment right of access to criminal proceedings applies to preliminary
hearings"). The Seventh Circuit has recognized the right to access criminal and civil
proceedings but has not extended that right beyond the confines of judicial
proceedings. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1070 (7th Cir. 2018)
(recognizing the *Press-Enterprise* test as "the framework for analyzing restrictions
on the press's right of access to court proceedings and documents"); *Matter of Cont'l*

State of Indiana
Response in Opposition to Successive Post-Conviction Review

*Illinois Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984) ("[T]he policy reasons for

granting public access to criminal proceedings apply to civil cases as well.").

Executions are not part of the judicial or adjudicative proceedings requiring

press and public access. The U.S. Supreme Court has recognized that the

circumstances under which executions should be carried out are "regulations which

the legislature, in its wisdom, and for the public good, could legally prescribe[.]"

*Holden*, 137 U.S. at 491. This includes determining the time and location of the

execution as well as "the number and character of those who may witness the

execution, and the exclusion altogether of reporters or representatives of

newspapers." *Id.* The U.S. Supreme Court has never held otherwise regarding the

power of states to legislate the conditions under which executions are carried out.

Ward's attempt to transform Indiana's exercise of this essential legislative

authority to regulate the manner of conducting executions into a court proceeding

must fail.

While the execution, or any punishment for that matter, is a part of the

criminal justice system in the carrying out of a judgment, *see Houchins v. KQED*,

438 U.S. 1, 8 (1978), it is not a part of a criminal proceeding or the proceedings

leading to the imposition of that criminal judgment. "In the legal sense, a [criminal]

prosecution terminates [] when [the] sentence is imposed." *Bradley v. United States*,

410 U.S. 605, 609 (1973) (citations omitted, alterations supplied). In other words,

once the judge presiding over the criminal case imposes a sentence, the criminal

proceeding is concluded, and the individual is committed to the executive for

State of Indiana
Response in Opposition to Successive Post-Conviction Review

execution of the sentence. *See Barnes v. State*, 435 N.E.2d 235, 242 (Ind. 1982)

("After sentencing, the custody of the defendant is with the Executive branch,

represented by the Department of Correction[].."); *see also Morrissey v. Brewer*, 408

U.S. 471, 480 (1972) ("revocation of parole is not part of a criminal prosecution");

*Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) ("[p]robation revocation, like parole

revocation, is not a stage of a criminal prosecution"); *Wolff*, 418 U.S. at 556

("[p]rison disciplinary proceedings are not part of a criminal prosecution").

Therefore, executions are not judicial or criminal proceedings within the meaning of

the First Amendment.

Ward attempts to extend this authority far beyond its rationale. The limited

extension of criminal proceedings to other judicial proceedings under the First

Amendment comports with the essential reasoning the Supreme Court identified in

*Richmond Newspapers*. The Court discussed "[t]he origins of the proceeding [that]

has become the modern criminal trial in Anglo-American justice[,]" which "can be

traced back beyond reliable historical records." *Richmond Newspapers*, 448 U.S. at

564–65. A survey of the history of criminal prosecutions "evince[d] a recognition of

the importance of public attendance apart from the 'jury duty' aspect." *Id.* (citation

omitted). "From this unbroken, uncontradicted history," which the Court found was

"supported by reasons as valid today as in centuries past," the Court "conclude[d]

that a presumption of openness inheres in the very nature of a criminal trial under

our system of justice." *Id.* at 573–74.

State of Indiana
Response in Opposition to Successive Post-Conviction Review

The proposition that First Amendment jurisprudence extends beyond judicial proceedings to other governmental actions is not supported by any U.S. Supreme Court case or any authority that this Court is obligated to follow. For instance, the Seventh Circuit found "the reasons for granting public access to criminal proceedings appl[ied] to civil cases" because of "the public's right to monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system." *Matter of Cont'l Ill. Sec. Litig.*, 732 F.2d at 1308; *see also Fort Wayne Journal-Gazette v. Baker*, 788 F. Supp. 379, 386 (N.D. Ind. 1992) (extending *Matter of Cont'l Ill. Sec. Litig.* to guardianship proceedings). Other jurisdictions have similarly declined to extend the right of access to proceedings beyond physical presence at trials. *See United States v. Yonkers Bd. of Educ.*, 747 F.2d 111, 113 (2d Cir. 1984); *Rice v. Kempker*, 374 F.3d 675, 679 (8th Cir. 2004). And a prison inmate only retains those First Amendment rights not inconsistent with his status as a prisoner or with the legitimate penal objectives of the corrections system. *Pell*, 417 U.S. at 822. The U.S. Supreme Court has recognized that "the 'internal problems of state prisons involve issues … peculiarly within state authority and expertise.'" *Id.* at 826 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 492 (1973)). Because executions are a specific executive function that require particular state authority and expertise, it necessarily follows that an offender may not retain all First Amendment rights to ensure the legitimate penal objectives in securing a safe and effective execution process. Neither logic nor binding authority extend this right of access beyond attendance at judicial proceedings.

State of Indiana
Response in Opposition to Successive Post-Conviction Review

Ward relies on *First Amend. Coal. of Ariz., Inc. v. Ryan*, 938 F.3d 1069, 1075 (9th Cir. 2019), to support his argument. This reliance is misplaced. *Ryan* relied entirely on *Cal. First Amend. Coal. v. Woodford*, where the court extended "public access to governmental proceedings … to the process of executing a condemned inmate within the confines of the prison." 299 F.3d 868, 874 (9th Cir. 2002). First, *Woodford* did so with little effort to explain the massive leap beyond judicial proceedings, such as a criminal prosecution, to execution of a sentence within the confines of prison walls. *Id.* The court's reasoning can be summarized as a statement borrowed from *Pell*, that "the conditions in this Nation's prisons are a matter that is both newsworthy and of great public importance," and "the Supreme Court has never flatly held that the press has no First Amendment right to view events inside prison walls." *Id.* at 874. That reasoning is underwhelming and fails to address exactly how executions fall within a judicial proceeding. Second, *Woodford* and *Ryan* conflict with the U.S. Supreme Court's conclusion in *Holden* that the decisions regarding the enclosure for the execution, whether it excludes the view of persons outside and who may witness the execution, "are regulations that do not affect [the offender's] substantial rights." *Holden*, 137 U.S. at 491. Ward has not established that his execution is a criminal proceeding within the meaning of the First Amendment.

Even if this Court were to find that executions constitute criminal or judicial proceedings within the meaning of the First Amendment, Ward's claim still fails. In *Press-Enterprise II*, the U.S. Supreme Court emphasized two "complementary"

49

State of Indiana

Response in Opposition to Successive Post-Conviction Review

factors courts should evaluate in determining whether there is a First Amendment

right of access to criminal proceedings: the "experience" element, which considers

whether the place and process have historically been open to the public; and the

"logic" element, which considers whether public access plays a significant positive

role in the functioning of the particular process in question. 478 U.S. at 8–9.

The "experience" element does not support finding a constitutional right for

witnesses to hear executions. "In contrast to the unbroken, uncontradicted history

of public access to criminal trials, in the 1830s, executions in the United States

became private events and moved from the public square to inside prison walls."

*Ark. Times, Inc. v. Norris*, No. 5:07-cv-195, 2008 WL 110853, at 4 (E.D. Ark. Jan. 7,

2008) (citing Michael Madow, *Forbidden Spectacle: Executions, the Public and the*

*Press in Nineteenth Century New York*, 43 Buff. L.Rev. 461, 557 (1995)); *see also In*

*re Ohio Execution Protocol Litig.*, 2017 WL 3033629, at 1 (S.D. Ohio July 18, 2017)

("As a matter of public policy, the States have moved away from public executions

since 1830 when Connecticut became the first State to do so; the last public

execution was in Kentucky in 1936") (citing Banner, *The Death Penalty: An*

*American History*, Harvard University Press 2002, 154, 156). In Indiana, all

executions by the State since 1897 have taken place at the Indiana State Prison. *See*

Dawn Mitchell, *A History of Executions in Indiana*, IndyStar (Dec. 11, 2019),

https://www.indystar.com/story/news/2019/12/11/indiana-executions-full-list-

peopleexecuted-since-1897/4357164002/. Given this history, Ward cannot show a

tradition of continued, uninterrupted openness necessary to satisfy the "experience"

State of Indiana
Response in Opposition to Successive Post-Conviction Review

prong of the of the *Press–Enterprise* test. *See Okla. Observer v. Patton et al.*, 73 F. Supp. 3d 1318, 1327 (W.D. Okla. 2014) (finding no historical tradition of public openness for executions that would support a First Amendment right to attend and noting that all executions in Oklahoma since 1915 have taken place at the Oklahoma State Penitentiary rather than a more public venue such as a public square).

The "logic" element also does not support finding a constitutional right for witnesses to hear executions. Opening the entirety of the execution to witnesses would not play a significant positive role in the execution process. *See Furman v. Georgia*, 408 U.S. 238, 297 (1972) (Brennan, J., concurring) ("No longer does our society countenance the spectacle of public executions, once thought desirable as a deterrent to criminal behavior by others. Today we reject public executions as debasing and brutalizing to us all."). Ward implies that witnesses must be able to hear the execution so they may "observe and report on the entire process so that the public can determine whether lethal injections are fairly and humanely administered" (S.P-C.R. 18) (quoting *Ryan*, 938 F. 3d at 1075). But the U.S. Supreme Court has long found lethal injection to be a humane manner of implementing capital punishment. *Baze*, 553 U.S. at 40. And the witnesses will be able to view the execution and report whether they believe it was fairly administered, even without sound. "[A]n inmate cannot succeed on an Eighth Amendment claim simply by showing one more step the State could take as a failsafe for other, independently adequate measures." *Id.* at 60–61. This approach

51

State of Indiana
Response in Opposition to Successive Post-Conviction Review

would serve no meaningful purpose and would frustrate the State's legitimate

interest in carrying out a sentence of death in a timely manner." *Id.* Therefore,

whatever information the witnesses may glean from hearing the execution would

not advance offenders' claims regarding the execution process.

Here, the current execution procedure balances these considerations by

allowing witnesses to be present for and view the execution if chosen by the

individual being executed. However, the procedure prevents the execution from

becoming an unnecessary spectacle by limiting witness access to the execution

process to only those the legislature has deemed necessary to ensure the safety and

efficacy of that process and those involved in it. In the absence of a longstanding

historical tradition to the contrary, this Court should not disturb the legislature's

and the Department of Correction's judgment regarding these issues. *See Houchins*,

438 U.S. at 13 (emphasizing that courts should not confuse policy considerations for

what is constitutionally commanded by the First Amendment). The current

execution procedure does not violate the First Amendment.

State of Indiana
Response in Opposition to Successive Post-Conviction Review

## CONCLUSION

This Court should deny Ward's request for another round of post-conviction

review, grant the State's motion to set an execution date, and order the tentative

date for his execution to be final.

Respectfully submitted,

THEODORE E. ROKITA
Indiana Attorney General
Attorney No. 18857-49

/s/ Tyler Banks
Tyler Banks
Supervising Deputy Attorney General
Attorney No. 30514-36

## VERIFICATION

Undersigned counsel verifies that the contents of this response are true and
accurate to the best of his knowledge and belief under penalty of perjury.

/s/ Tyler Banks
Tyler Banks
Supervising Deputy Attorney General
Attorney No. 30514-36

53

State of Indiana
Response in Opposition to Successive Post-Conviction Review

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 11, 2025, I electronically filed the foregoing document using the Indiana E-Filing System (IEFS), and that on the same date the foregoing document was served upon counsel via IEFS:

Amy Karozos

Joanna Green

Laura Volk

<u>/s/ Tyler Banks</u>
Tyler Banks
Supervising Deputy Attorney General
Attorney No. 30514-36

OFFICE OF INDIANA ATTORNEY GENERAL TODD ROKITA
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 234-7016
Email: Tyler.Banks@atg.in.gov